J-A27009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES FLOYD, JR., EXECUTOR OF THE ESTATE OF JAMES C. FLOYD, SR., DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ASTENJOHNSON, INC. | |
| | No. 3663 EDA 2015 |

Appeal from the Order October 28, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 3992, January Term, 2013

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J. [*]

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 19, 2017**

Appellant, James Floyd, Jr., as Executor of the Estate of James C. Floyd, Sr., Deceased, appeals from the order entered in the Philadelphia County Court of Common Pleas, which entered summary judgment in favor of Appellee, AstenJohnson, Inc. We affirm.

The trial court summarized the relevant facts and procedural history as follows.

> [Appellant] commenced this suit against forty-five (45) defendants on February 1, 2013. [Appellant] alleged James Floyd, Sr. ["Decedent"] contracted [m]esothelioma through his exposure to various asbestos-containing products while

_____

[*] Former Justice specially assigned to the Superior Court.

employed at Sun Oil from 1939 to 1951 and at Scott Paper from 1951 to 1984.

[Appellee] is the successor-in-interest to Asten-Hill Manufacturing Co. (1932-1977) and Asten Group, Inc. (1977-1994). Both companies manufactured dryer felts and fabrics used on paper making machines. [Appellee] admits that until 1980, some but not all of the felts manufactured by [Appellee] contained asbestos and claims it ceased manufacturing asbestos-containing felts and fabrics in 1980. [Decedent] was not deposed in this case. His son, Appellant, was deposed on July 24, 2015, and testified that he worked at Scott Paper with his father from 1977 to 1984.

On August 15, 2015, [Appellee] filed its [m]otion for [s]ummary [j]udgment, arguing [Appellant] could not show [Decedent] was ever exposed to an asbestos-containing [Appellee] product. [Appellant] claimed [Appellant's] testimony, combined with the testimony of other Scott Paper employees deposed in previously unrelated cases, showed [Decedent] was exposed to dust from asbestos-containing [Appellee's] dryer felts.

On October 28, 2015, the [lower court] granted [Appellee's] motion, finding [Appellant] failed to produce sufficient evidence Decedent inhaled asbestos from [Appellee's] dryer felts. On November 17, 2015 the matter settled as to all remaining non-bankrupt parties.

Trial Court Opinion, filed 4/28/16, at 1-2 (unpaginated opinion) (internal citations to the record omitted). Appellant filed a timely notice of appeal.

On appeal, Appellant raises the following issue for our review.

1. DID THE LOWER COURT ERR WHEN IT RULED THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO [DECEDENT'S] EXPOSURE TO ASBESTOS WHILE WORKING WITH ASBESTOS DRYER FELTS MANUFACTURED BY [APPELLEE]?

Appellant's Brief, at 4.

Specifically, Appellant argues that he presented sufficient evidence, through the depositions of Appellant and former Scott Paper employees, Albin Koronkiewicz and James Golden, from which a reasonable jury could infer that Decedent's mesothelioma was caused by his exposure to [Appellee's] asbestos-containing dryer felts. **See id**., at 11-12. Further, Appellant argues that the trial court's failure to conclude that the deposition testimony of Koronkiewicz provided a genuine issue of material fact that, during the time Decedent worked at Scott Paper, [Appellee's] dryer felts contained asbestos which released particles into the air, violates the binding precedent of **Wright v. Allied Signal, Inc**., 963 A.2d 511 (Pa. Super. 2008). **See id**., at 11.

Appellee counters that the Court's finding in **Wright**, that Koronkiewicz's deposition testimony provided a genuine issue of material fact sufficient to survive summary judgment, is not binding precedent in this case. **See** Appellee's Brief, at 14-15. Specifically, Appellee contends that the **Wright** Court's finding that Koronkiewicz's testimony created a genuine issue of fact hinged upon Koronkiewicz's identification of plaintiff as a person who was exposed to the asbestos dust. And that testimony, according to Appellee, is simply not present here. **See id**.

We review a challenge to the entry of summary judgment as follows.

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary. In evaluating the trial court's decision to enter summary

- 3 -

judgment, we focus on the legal standard articulated in the summary judgment rule. ***See*** Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***E.R. Linde Const. Corp. v. Goodwin***, 68 A.3d 346, 349 (Pa. Super. 2013)

(citation omitted).

Further, we apply specific standards to motions for summary judgment involving claims of asbestos-related injuries.

[I]n order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury.

***Krauss v. Trane U.S. Inc***., 104 A.3d 556, 563 (Pa. Super. 2014) (citing

***Eckenrod v. GAF Corp***., 544 A.2d 50, 52 (Pa. Super. 1988)).

In order to determine whether plaintiff has provided sufficient evidence that defendant's products were the cause of plaintiff's injuries, our courts apply the "frequency, regularity, proximity standard." ***Gregg v. V-J Auto Parts, Company***, 943 A.2d 216, 226 (Pa. 2007). This standard, originally

set forth in *Eckenrod*, requires a plaintiff attempting to defeat a motion for summary judgment to present evidence concerning "the frequency of use of the product and the regularity of plaintiff's employment in proximity thereto." 544 A.2d at 53. The trial court, in evaluating this evidence concerning frequency, regularity and proximity of exposure, must then make a reasoned assessment of whether a jury would be justified in making "the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." *Gregg*, 943 A.2d at 227.

In order to make this assessment the trial court must not apply the criteria of frequency, regularity and proximity as a "rigid standard with an absolute threshold necessary to support liability." *Id*. at 225.

> Rather, they are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product. [A]pplication of the test should be tailored to the facts and circumstances of the case, such that, for example, its application should become somewhat less critical where the plaintiff puts forth specific evidence of exposure to a defendant's product. Similarly, … the frequency and regularity prongs become somewhat less cumbersome in cases involving diseases that the plaintiff's competent medical evidence indicates can develop after only minor exposures to asbestos fibers.

*Sterling v. P & H Mining Equipment*, 113 A.3d 1277, 1281 (Pa. Super. 2015) (citing *Gregg*, 943 A.2d at 225).

Instantly, the trial court found the evidence in this case analogous to the evidence produced in **Sterling**, and therefore reasoned as follows.

> In this case, [Appellant] was entitled to summary judgment. The only testimony that mentions or even contemplates [Decedent's work] was [Appellant's] deposition. [Appellant] was employed at Scott Paper from 1977 to 1994 as a process lab supervisor.
>
> [Appellant's] testimony establishes [Decedent] replaced dryer felts approximately twice a year, and it was a "dusty job." [Appellant] could only say the dust came from the mills, he could not say more specifically where it came from or its contents. [Appellant] never testified the felts he saw his father work with were manufactured or supplied by [Appellee], nor could he say the felts contained asbestos.
>
> This testimony is insufficient to show (1) the dryer felt Decedent worked with was an [Appellee] felt; (2) Decedent inhaled dust from any of the felts; (3) the felts Decedent worked with contained asbestos. Since none of the other depositions supplied by [Appellant] mention Decedent, [Appellant] has failed to provide any sufficient evidence establishing [Decedent] inhaled dust from an [Appellee] product, let alone on a regular and frequent basis.
>
> [Appellant] also supplied in its answer the deposition of Albin Koronkiewicz from two unrelated asbestos cases involving Koronkiewicz's co-wrokers and other employees of Scott Paper; The Wright case and the Norton case. Koronkiewicz testified as far as he knew, he thought the felts were made of asbestos. He testified the felts at Scott Paper were made by Appellee, Albany, and possibly a third manufacturer he could not recall. He testified Ray Wright would visit the paper plant on occasion, and there was no way for him to avoid breathing dust from Appellee felts.
>
> In Koronkiewicz's testimony for the Norton case, he testified all of the asbestos felts he opened from the [19]50's to [the 19]70's were [Appellee] asbestos felts.

[Appellant] also supplied the deposition testimony of [Appellee] [c]orporate [r]epresentative David McCann and an interrogatory answer from [Appellee] to show the asbestos content of the [Appellee] felts. McCann testified in 1971 some [Appellee] felts contained asbestos, and some did not. Through Interrogortories, [Appellee] stated, "[s]ome of the dryer fetls and fabrics were woven, in part, using chrysotile (asbestos)-containing yarn[.]"

\*\*\*\*\*

While Koronkiewicz's testimony establishes some [Appellee] felts at Scott Paper, it would still be speculative to conclude the felts Decedent and Koronkiewicz worked with were the same brand, just because both men worked at the same plant. [Appellant] has produced no evidence [] Decedent worked with, or was exposed to dust from, any product manufactured by [Appellee].

Even if assumed some of the felts [] Decedent worked with were [Appellee's], further speculation would be required to establish those felts contained asbestos. Even more speculation would be required to establish he was exposed to dust from [Appellee's] [f]elts on a regular and frequent basis.

Trial Court Opinion, 4/28/16, at 7-9 (unpaginated opinion) (internal citations to the record omitted).

Our review of the record supports the trial court's conclusion that this case is analogous to *Sterling*, as well as its subsequent analysis of the evidence. *See* 113 A.3d at 1277. In *Sterling*, we held that summary judgment is proper in an asbestos case where plaintiff's only evidence consists of plaintiff's personal belief that dust contains asbestos and the testimony of co-workers who were unable to note the frequency, regularity, or proximity of plaintiff's alleged exposure to asbestos. *See id*., at 1282-1283.

Here, while Appellee conceded in answers to interrogatories that it produced and sold asbestos-containing dryer felt during the period Decedent worked at Scott Paper, this admission is insufficient to conclude that Appellee *even sold* asbestos-containing dryer felts to Scott Paper, let alone that Decedent encountered these dryer felts. Further, Appellant was only able to provide evidence that Decedent worked in dusty conditions with the dryer felts, but *conceded* that he was unable to identify the source of the dust, the brand of the dryer felts, and whether or not the dryer felts contained asbestos. Thus, as the Court found in **Sterling**, the only evidence presented concerning Decedent's tenure at Scott Paper failed to contain any information concerning Decedent's frequency, regularity, or proximity to Appellee's asbestos-containing dryer felts. **See id**., at 1282.

Moreover, despite Appellant's contention, we are not required to regard the finding in **Wright** as binding precedent, as Koronkiewicz's deposition testimony was credited in **Wright** mainly *because* Koronkiewicz was able to identify Wright as a person who worked frequently in close proximity to an asbestos-containing product. **See** 963 A.2d at 519. Here, by contrast, Koronkiewicz's deposition testimony cannot be treated in the same way as it was in **Wright** because Koronkiewicz never identifies Decedent as a person having exposure to Appellee's asbestos-containing dryer felts. Thus, because the deposition testimony Appellant provides of other Scott Paper employees provides *no* information regarding the frequency,

regularity, or proximity of Decedent's alleged exposure to asbestos in Appellee's dryer felts, we find that Appellant failed to adduce sufficient evidence to support the inference that Decedent inhaled asbestos from Appellee's dryer felts. Therefore, the trial court properly entered summary judgment in favor of Appellee.

Order affirmed.

Judge Lazarus joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2017